**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GLORIA BABINEAUX, individually and on behalf of all others similarly situated,** | **Civil No.** |
| ***Plaintiff/Class Representative*,** | **Jury Trial Demanded** |
| **vs.** | **Class Action Complaint** |
| **XANODYNE PHARMACEUTICALS, INC.** | |
| ***Defendant*.** | |

## CLASS ACTION COMPLAINT

NOW INTO COURT comes Plaintiff GLORIA BABINEAUX, individually and on behalf of all others similarly situated, and hereby alleges as follows based upon public documents and information and belief against Xanodyne Pharmaceuticals, Inc. (hereinafter "Defendant").

### PARTIES

1. Plaintiff GLORIA BABINEAUX is domiciled in Rayne, Louisiana, Parish of Acadia. Plaintiff was prescribed and purchased the drug Darvocet in 2000 for arthritis and subsequently suffered a heart attack as a result of the medication Darvocet. Plaintiff brings this action to recover damages for personal injuries sustained after taking Darvocet.

2. Defendant Xanodyne Pharmaceuticals, Inc., has its principal place of business in Kentucky. Xanodyne describes itself as a as an integrated specialty pharmaceutical company with both development and commercial capabilities focused on pain management.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Western District of Louisiana.

## FACTUAL ALLEGATIONS

6. Plaintiff brings this action to recover damages for personal injury, restitution, refund and/or for equitable, injunctive relief against Xanodyne, who tested, marketed, distributed, promoted, sold, prescribed and filled Darvocet, which the Plaintiff took after it was prescribed to her, and, as a result thereof, suffered damages.

7. This case involves the Plaintiff's use of a drug called Darvocet. It was designed to treat mild to moderate pain with or without fever.

8. It was designed, formulated, patented, marketed, sold, and ultimately distributed by the Defendant as Darvocet.

9. On December 19, 2010, the Food and Drug Administration ("FDA") announced that Xanodyne Pharmaceuticals had agreed to halt all U.S. Marketing of Darvon and the related brand Darvocet, which have been subject to safety concerns for decades.

12. Concurrently the FDA ordered generic drugmakers to stop making and selling low-cost drugs containing the active ingredient Darvon, called propoxyphene.

13. The United States Food and Drug Administration ("FDA") first approved Propoxyphene in 1957, as it is an opioid narcotic used to treat mild to moderate pain. About 10

million people in the U.S. received prescriptions for Darvon and related drugs, according to the in 2009 according to the FDA.

14. Defendant had an obligation not to comply with the law in the manufacture, design, and sale of Darvocet.

15. Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq*.

16. Defendant failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff, making the Defendant negligent *per se*.

**COUNT I**
**Breach of Express Warranty**

17. Plaintiff restates and realleges all paragraphs above and in addition, states matters as set forth below.

18. Defendant expressly warranted to the market, including the Plaintiff, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials to the health care community, that Darvocet was safe, effective, fit and proper for its intended use.

19. In using Darvocet, the Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of the Defendant. These warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was intended.

20. As a direct and proximate result of Defendant's breaches of warranties, Plaintiff was injured and suffered special and compensatory damages to be proven at trial.

**COUNT II**
**Violation Of Warranty Of Redhibition**

21. Defendant was aware that there was no evidence to suggest that Darvocet had any measurable efficacy to treat these off-label uses and thus it was not fit for its intended uses.

22. Also, because Defendant was also the manufacturer of Darvocet, Defendant is deemed to be aware of Darvocet's redhibitory defects pursuant to LSA-C.C. art. 2545.

23. Because there was no clinically significant evidence providing that Darvocet had any effect on the treatment of Plaintiff's illness, Plaintiff avers that Plaintiff would not have purchased Darvocet had Plaintiff known of these defects.

24. Defendant is thus liable to each of the proposed class members under the theory of redhibition.

25. Thus, each class member is entitled to a return of any purchase price paid, including but not limited to insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiff may be entitled.

**COUNT III**
**Breach Of The Implied Warranty**

26. Plaintiff incorporates the allegations contained in the preceding paragraphs.

27. Defendant has breached the implied warranty of merchantability in that Darvocet was not reasonably fit for the off label purposes for which it was sold, intended, or reasonably foreseen, to be used. Moreover, the Darvocet manufactured and sold by Defendant was defective on the date of its delivery to Plaintiff and the Class.

28. Defendant has also breached the implied warranty of fitness for a particular purpose. Darvocet is not reasonably fit for the specific off label purposes for which Defendant

knowingly sold it and for which the Plaintiff and Class bought Darvocet in reliance on Defendant.

29. Plaintiff and the Class have suffered damages as a result of Defendant's breach of warranty.

**COUNT IV**
**Unjust Enrichment**

30. Plaintiff incorporates the allegations contained in the preceding paragraphs.

31. Defendant has knowingly received, and continues to receive, a substantial benefit at the expense of Plaintiff and Class members.

32. It would be unjust and unconscionable to permit Defendant to enrich themselves at the expense of Plaintiff and Class members and to retain the funds that Defendant wrongfully obtained from Plaintiff and Class members.

**COUNT V**
**Negligence**

33. Plaintiff incorporates the allegations contained in the preceding paragraphs.

34. Defendant has a duty to exercise the necessary degree of care expected and required of manufacturers of health care products. Defendant deviated from that duty by promoting the off-label uses of Darvocet.

35. As a result of Defendant's negligence, Plaintiff and the Class have been injured. These damages are the actual and proximate result of Defendant's breach of this duty of care.

**STRICT PRODUCTS LIABILITY**
**(INADEQUATE WARNING UNDER L.A. R.S. 9:2800.57)**
**(Against All Defendants)**

36. The subject products manufactured and supplied by Defendants were defective due to inadequate warning or instruction because Defendant failed to conform with federal

and/or state requirements for labels, warnings, and instructions, and/or alternatively, Defendants knew or should have known, that the product created significant risks of serious bodily harm to consumers and Defendants failed to adequately warn consumers and/or their health care providers of such risks. The subject product was unreasonably dangerous because an adequate warning was not provided as provided pursuant to La.R.S. 9:2800.57.

37. The subject product manufactured and supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of serious bodily harm from the use of the subject product, Defendant failed to provide an adequate warning to consumers and/or their health care providers of the defects of the product, and/or alternatively failed to conform to federal and/or state requirements for labeling, warnings and instructions, or recall, while knowing that the product could cause serious injury.

38. As a direct and proximate result of the use of the subject product as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendant, Plaintiffs suffered harm, damages and economic loss as previously described and will continue to suffer such harm, damages and economic loss in the future.

**CLASS ACTION**

36. This action is appropriate for determination through the Class Action Procedure for the following reasons:

A. The large number of potential claimants present a level of numerosity better handled through the class action procedure as opposed to a mass joinder of individual claims;

B. The common issues of law and fact pertaining to the determination of fault and the liability for compensatory and exemplary damages predominate over the individual issue of quantum, and such issues are typical of similar claims;

C. The determination of fault and the basis for assessment of compensatory and exemplary damage may be made in the class action without the necessity of proof at that time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary;

D. Petitioners herein have sustained damages of the nature described hereinabove and are suitable representatives of the class;

E. The Plaintiffs herein are represented by skilled attorneys who are experienced in handling mass torts and class actions, and who can be expected to handle this matter in an expeditious and economical matter to the best interests of the class membership;

F. The class action procedure is the superior vehicle for the efficient disposition of the issues and claims herein presented.

**WHEREFORE**, Plaintiffs pray:

1. that defendant be required to answer this class action complaint after all legal delays have run, all in accordance with law;

2. that after due proceedings had, that this action be certified as a class action, as alleged above, for the purposes of determining the common issue of liability for appropriate damages;

3. that upon certification of the class action, the Court call for the formulation of a suitable management plan;

4. that after due proceedings had, and a trial by jury, there be judgment herein in favor of Plaintiffs and against defendant, for all damages which are reasonable in the premises, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings;

5. that the rights of the Plaintiffs and the members of the class to establish their entitlement to compensatory damages, and the amounts thereof, be reserved for determination in their individual actions when appropriate;

6. that Plaintiffs recover their costs for the prosecution of this class action;

7. that a medical monitoring class be certified, and the court award appropriate damages sufficient to establish a medical monitoring program as deemed effective by Plaintiffs' medical experts; and

8. that the Court render judgment in favor of the Plaintiffs' class awarding all damages as prayed for herein, including attorneys' fees, with all costs assessed against Defendant.

**RESPECTFULLY SUBMITTED,**

**/s/ Daniel E. Becnel, Jr.**

**LAW OFFICES OF DANIEL E. BECNEL, JR.**
**Daniel E. Becnel, Jr. (T.A., La.Bar 2926)**
**Matthew B. Moreland (La.Bar 24567)**
**106 West Seventh Street**
**P.O. Drawer H**
**Reserve, LA 70084**
**Telephone: (985) 536-1186**
**Facsimile: (985) 536-6445**

**Morris Bart (La. Bar No. 2788)**
**MORRIS BART, L.L.C.**
**909 Poydras St., 20th Floor**
**New Orleans, LA 70112**
**Telephone: (504) 525-8000**
**Fax: (504) 599-3382**